IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRED D.[1],  )
                                )
          **Plaintiff,**  )
                                )
vs.  )  **Case No. 23-cv-1446-SMY**
                                )
MARTIN O'MALLEY,  )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
                                )
          **Defendant.**  )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Fred D. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for supplemental security income in March 2021, alleging a disability onset date of September 23, 2020 (Tr. 254). After the state agency denied his application, Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") in October 2022 (Tr. 15-70).

The ALJ denied Plaintiff's application on December 1, 2022 (Tr. 15-35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1-6). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ erred by formulating the physical RFC contrary to the record, including the ALJ's own findings, the medical record, and Plaintiff's testimony.

2. The ALJ did not properly evaluate Plaintiff's mental impairments at Step 2.

**Legal Standard**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**Decision of the ALJ**

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He found that Plaintiff suffered from the following severe impairments since the alleged onset date of disability: "thoracolumbar degenerative disc disease with radiculopathy; cervical degenerative disc disease; left knee degenerative joint disease; right hip bursitis and peripheral arterial disease (status-post revascularization procedure involving stent work)" (Tr. 18). The ALJ further found that Plaintiff's mental impairments were not severe (Tr. at 19-20). The ALJ noted some limitations, but concluded that none of the impairments met or equaled a listed impairment.

The ALJ determined that Plaintiff had the RFC to do the following:

sedentary work as defined in 20 CFR 416.967(a) except could never climb ladders, ropes or scaffolds; could only occasionally climb stairs or ramps; could

only occasionally stoop, kneel, crouch and crawl; could only occasionally engage in balance on uneven surfaces; would require the use of a cane for ambulation; and could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles and exposure to unprotected heights.

(Tr. 27). The ALJ concluded that Plaintiff was able to perform a significant number of other jobs in the national economy, and as a result, was not disabled (Tr. 34).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

## Evidentiary Hearing

Plaintiff was represented by counsel at his hearing in October 2022 (Tr. 43-73). He testified to the following: Plaintiff was born on October 19, 1978. He is unable to work full time due to pain on his right side (primarily lumbar pain from his hip to his toes). He described the pain as varying throughout the day from a stabbing pain to feeling like a rubber band is wrapped around his lower extremities. Sitting, standing, and walking increase his pain. He can only stand for 5-to-7-minute increments before the pain starts. Plaintiff uses a walker or cane. He experiences daily swelling of his right leg. To alleviate the swelling, Plaintiff keeps his leg elevated all day. He does not cook, shop, drive, or perform household chores. Plaintiff's hands also shake, and it is hard for him to pick items up. He spends most of his time watching television.

A vocational expert ("VE") testified at the hearing. The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. *Id*. The VE testified that work exists in the national economy for an individual with Plaintiff's conditions. *Id*.

**Relevant Medical Records**

Plaintiff reported experiencing pain, swelling, tingling, and numbness in his lower extremities in May 2022 (Tr. 934-35).  He utilized compression socks.  In June 2022, he sought treatment for lymphedema.  *Id.*  Plaintiff participated in physical therapy and reported using a cane and walker (Tr. 937-38).  An arterial ultrasound showed Plaintiff had normal ABI and TBI in his left leg and mildly decreased ABI in his right leg (Tr. 929). Correlation with a CT scan showed occlusion of the right external iliac artery, which radiologist Carlos Javier Guevara, M.D., noted was likely the cause of Plaintiff's symptoms (Tr. 929).  Dr. Guevara diagnosed Plaintiff with peripheral arterial disease (Tr. 968).

In August 2022, Plaintiff underwent a revascularization procedure involving stent work in his right leg (Tr. 950-51).  Plaintiff testified that he still experienced swelling in his right leg (Tr. 56-57, 982). Plaintiff told Dr. Guevara that the surgery had improved his right leg pain, though he still experienced leg pain and swelling at the end of the day that was relieved with elevation (Tr. 974-76). Dr. Guevara noted Plaintiff was waiting for approval for back surgery to address his residual right leg pain. *Id.*  Dr. Guevara did not advise a need for a specific amount of leg elevation during the day or that Plaintiff would require the ability to elevate his legs if working (Tr. 30, 31).  The ALJ noted that Plaintiff has sought minimal follow-up for his peripheral arterial disease.  The record also lacked documentation from a provider that he needs to elevate his legs for a specific amount of the day.

Plaintiff was diagnosed with mood, adjustment, obsessive-compulsive disorder, and somatic disorders (Tr. 366-70).  He also has issues with memory and following directions. Provider notes regarding Plaintiff's mental status were limited, and he had only received minimal mental health treatment.  Some records noted an anxiety-state, but provider observations have

generally reflected normal mood, behavior, and comprehension (Tr. 463-64, 565, 649, 675, 832, 861). The records also showed Plaintiff had normal affect, thought content, and judgment and that he got along with authority figures (Tr. 463-64, 649, 832).

A consultative psychological examiner, Stephen Vincent, Ph.D., noted that Plaintiff had slow and deliberate thought processes with pain preoccupation that reduced his ability to concentrate, and wanted to give up easily on tasks well within his cognitive abilities (Tr. 742). Dr. Vincent also noted that Plaintiff was easily redirected and gave adequate answers with prompting; had adequate cognitive functioning; related adequately; and pain complaints ultimately did not interfere with his ability to focus, concentrate, persist, and complete his thought processes and responses to test questions (Tr. 742-43). A consultative physical examiner, Raymond Leung, M.D., noted that Plaintiff had intact memory and normal fund of knowledge and was cooperative, alert, and oriented (Tr. 732-33).

State agency consultant Howard Tin, Psy.D. noted that Plaintiff had diagnosis of depression, obsessive-compulsive disorder, somatic disorder, and anxiety by history (Tr. 169-181). Plaintiff was prescribed psychotropic medications for anxiety. *Id.* Dr. Tin found that Plaintiff's allegation of the severity of the disorder was not consistent with his ability to function generally from day to day. *Id.* He found that Plaintiff had up to moderate mental limits in interacting and concentration domains with need for restriction to 1-2 step tasks. *Id.*

## Discussion

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). It is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," *Id.*, and must be supported by substantial evidence. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). An

"ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  However, "an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Id.* (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

Plaintiff asserts that although the ALJ found that he has peripheral arterial disease, the RFC bears no meaningful relationship to Plaintiff's inability to perform basic work activities because of his condition.  Specifically, Plaintiff contends the ALJ improperly omitted a leg elevation limitation from the RFC.

The ALJ supported his RFC determination with substantial evidence and accurately characterized the medical evidence.  The ALJ noted that Plaintiff sought treatment for lymphedema in June 2022 and underwent a revascularization procedure in August 2022.  The ALJ noted that although Plaintiff testified that he still experienced swelling in his right leg and elevated his legs above heart-level most days, the medical records showed that follow-up ABI testing was normal.  Plaintiff also told his treating physician that the surgery had improved his right leg pain though he still experienced swelling at the end of the day which was relieved with elevation.  The ALJ emphasized that none of Plaintiff's treating physicians recommended that Plaintiff elevate his legs for any specific amount of time during the day or opined that Plaintiff would require the ability to elevate his legs during a work shift.  The ALJ also noted that Plaintiff sought minimal follow-up treatment for his peripheral arterial disease.

The ALJ reasonably found that the record did not support the need for a leg elevation limitation during the workday.  Instead, the reduced sedentary RFC accounted for Plaintiff's physical impairments. And although Plaintiff testified that he had to keep his leg elevated above

heart level all day long, the ALJ was not required to believe that testimony in light of the medical evidence to the contrary. The ALJ may rely on conflicts between Plaintiff's testimony and the objective record, as "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch,* 539 F.3d at 483.

Next, Plaintiff contends the ALJ erred by failing to properly evaluate his mental impairments, which result in significant work limitations as demonstrated by Dr. Tin's report. The ALJ's evaluation of the medical opinion evidence in Plaintiff's case was subject to new regulations pertaining to claims filed after March 27, 2017. 20 C.F.R. § 404.1520(c) (2017). Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).

ALJs evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. § 404.1520c(c)(1)– (5). The ALJ must explain only how he considered the first two factors – supportability and consistency – but need not explain his consideration of the other factors. *Id.* § 404.1520c(b)(2). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). While consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

In this case, the ALJ supported his RFC determination with substantial evidence and accurately characterized the medical evidence that established Plaintiff suffers from mild mental limitations.  Specifically, in finding that Dr. Tin's findings were unpersuasive, the ALJ referred to the medical records which established Plaintiff's mental limitations were more consistent with only non-severe mental impairments.  The ALJ noted that Plaintiff has generally presented as cognitively intact – he was able to answer all questions adequately with prompting; was easily redirected; had adequate cognitive functioning; and provider notes have lacked observation of significant distractibility or cognitive slowness.  Plaintiff had only received minimal mental health treatment and, although some records noted an "anxiety state", Plaintiff's providers observed that he had normal mood and behavior.  The ALJ also noted that Plaintiff communicated adequately during the hearing and did not testify about any mental symptoms or concerns.  The ALJ's discussion of this evidence, which supported a finding that Plaintiff suffers from only non-severe mental impairments, was consistent with his ruling that Plaintiff was not disabled and was reasonable and supported by substantial evidence.

## Conclusion

After careful review of the record, the Court finds that ALJ's findings are supported by substantial evidence.  Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.**  The Clerk of Court shall enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: September 11, 2024**

_____
**STACI M. YANDLE**
**United States District Judge**